UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA – RICHMOND DIVISION

| | |
|---|---|
| NJOY, LLC, NJOY HOLDINGS, INC., ALTRIA GROUP, INC., ALTRIA GROUP DISTRIBUTION CO., ALTRIA CLIENT SERVICES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE INTERNATIONAL TRADE COMMISSION, AMY A. KARPEL, in her official capacity as Chair and Commissioner of the International Trade Commission, DAVID S. JOHANSON, in his official capacity as Commissioner of the International Trade Commission, JASON E. KEARNS, in his official capacity as Commissioner of the International Trade Commission, DORIS JOHNSON HINES, in her official capacity as Administrative Law Judge of the International Trade Commission,<br><br>Defendants. | Case No. 3:25cv930<br><br>COMPLAINT |

## COMPLAINT

Plaintiffs NJOY, LLC, NJOY Holdings, Inc. (together, "NJOY"), Altria Group, Inc., Altria Group Distribution Co., and Altria Client Services (collectively with NJOY, "Plaintiffs") bring this Complaint for injunctive and declaratory relief against the International Trade Commission (the "Commission"); Amy A. Karpel, David S. Johanson, and Jason E. Kearns, in their official capacities as Commissioners of the Commission; and Doris Johnson Hines, in her official capacity as Administrative Law Judge of the Commission.

**PRELIMINARY STATEMENT**

1. Plaintiffs bring this Complaint to enjoin the Commission's unlawful administrative proceeding against Plaintiffs (the "ITC Proceeding"), which seeks to prevent Plaintiffs from

importing into the United States certain of their e-vapor devices, cartridges used therewith, and components thereof. The ITC Proceeding violates at least three separation-of-powers principles mandated by the Constitution to protect citizens from overreach by the federal government.

2. First, the Administrative Law Judge ("ALJ") who is presiding over the ITC Proceeding was improperly appointed not by the full Commission (the "Head" of a Department) but only by the Commission's Chair, in violation of the Appointments Clause.

3. Second, the ALJ who is presiding over the ITC Proceeding enjoys two layers of for-cause protection from presidential removal, in violation of Article II.

4. Third, the Commission seeks to adjudicate Plaintiffs' private rights outside of the judiciary and without a jury, in violation of Article III and the Fifth and Seventh Amendments.

5. The remedy for these constitutional violations is a permanent injunction of the unconstitutional ITC Proceeding.

**PARTIES**

6. Plaintiffs are respondents in Commission Investigation No. 337-TA-1460.

7. Plaintiff NJOY, LLC is an unincorporated association with its principal place of business at 6601 W. Broad Street Richmond, VA 23230.

8. Plaintiff NJOY Holdings, Inc. is a corporation with its principal place of business at 6601 W. Broad Street Richmond, VA 23230.

9. Plaintiff Altria Group, Inc. is a Virginia corporation with its principal place of business at 6601 W. Broad Street Richmond, VA 23230.

10. Plaintiff Altria Group Distribution Company is a Virginia entity with its principal place of business at 6601 W. Broad Street Richmond, VA 23230.

11. Plaintiff Altria Client Services LLC is an unincorporated association with its principal place of business at 6601 W. Broad Street Richmond, VA 23230.

12.     Defendant International Trade Commission is an agency of the United States government whose principal place of business, on information and belief, is at 500 E Street SW, Washington, DC 20436.

13.     Defendant Amy A. Karpel is the Chair and a Commissioner of the Commission. She was sworn in as a Commissioner on August 26, 2019, and was designated as the Commission's Chair by former President Biden on June 20, 2024. She is sued in her official capacity.

14.     Defendant David S. Johanson is a Commissioner of the Commission. He was sworn in as a Commissioner on December 8, 2011. He is sued in his official capacity.

15.     Defendant Jason E. Kearns is a Commissioner of the Commission. He was sworn in as a Commissioner on April 2, 2018. He is sued in his official capacity.

16.     Defendant Doris Johnson Hines is an ALJ of the Commission. She was appointed as an ALJ of the Commission on February 27, 2023. She is presiding over the ITC Proceeding. She is sued in her official capacity.

## JURISDICTION AND VENUE

17.     This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

18.     Under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), the statutory review scheme set forth at 28 U.S.C. § 1295(a)(6) does not displace this Court's federal question jurisdiction over constitutional challenges to the structure of the Commission.

19.     Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(c)(1) and (e)(1) because Plaintiffs reside in this District.

20.     This Court may grant the relief prayed for under the U.S. Constitution; the All Writs Act, 28 U.S.C. § 1651(a); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a)–2202.

## FACTUAL BACKGROUND

### A. The structure of the International Trade Commission

21. The Commission is an Executive Branch agency that comprises six Commissioners appointed by the President and confirmed by the Senate. 19 U.S.C. § 1330.

22. The President designates one of the Commissioners to serve as Chair. *Id.* § 1330(c)(1).

23. Amy A. Karpel (Chair), David S. Johanson, and Jason E. Kearns are the current Commissioners. The Commission currently has three vacancies.

24. The Commission is charged with, among other things, investigating the importation of an article to the United States, or the sale of an article within the United States after importation, that infringes a valid and enforceable United States patent. 19 U.S.C. § 1337(a)(1)(B).

25. An investigation instituted pursuant to 19 U.S.C. § 1337 is referred to as a Section 337 investigation or administrative proceeding.

26. A proceeding under 19 U.S.C. § 1337(a)(1)(B) is similar to a patent infringement action in district court.

27. In both types of proceedings, invalidity of the patent may be raised as a defense; if such a defense is raised, the tribunal must adjudicate it. *See, e.g.*, 19 U.S.C. § 1337(a)(B)(i); 35 U.S.C. § 282(b)(2); *see also Mayborn Grp., Ltd. v. ITC*, 965 F.3d 1350, 1355 (Fed. Cir. 2020) ("Patent invalidity is an affirmative defense to an action for infringement in district court or before the Commission.").

28. A complainant must generally show that the importation, sale for importation, or sale within the United States after importation infringes a valid and enforceable United States patent, and that there is an industry in the United States related to articles protected by the patent. 19 U.S.C. § 1337(a)(1)–(2).

29. If the Commission finds a violation in a Section 337 administrative proceeding, the Commission is statutorily directed to issue an order excluding the violative articles from entry into the United States, unless the Commission determines that certain factors related to public welfare and competitive conditions counsel otherwise. 19 U.S.C. § 1337(d)(1).

30. Section 337 administrative proceedings are heard in the first instance by an ALJ. 19 C.F.R. § 210.3. After conducting an evidentiary hearing, the ALJ issues a finding, called an initial determination, regarding whether the complainant has demonstrated that respondents have violated Section 337. *Id.* § 210.42(a)(1)(i).

31. The Commission, and ultimately the President, may elect to review the initial determination, but if neither conducts such review within the statutorily allotted times, the initial determination becomes the final action of the Executive. *Id.* §§ 210.42(h)(2), 210.49(d).

32. By statute, the Chair, rather than the full Commission, appoints the Commission ALJs. 19 U.S.C. § 1331(a)(1)(A)(i).

33. Once appointed, those ALJs are vested with two layers of for-cause removal protections.

34. A Commission ALJ may be removed "only for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a), (b)(1); *see* 19 C.F.R. § 210.3.

35. Members of the Merit Systems Protection Board, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

B.     The ITC Proceeding

36.    JUUL Labs, Inc. ("JUUL") is a direct competitor with NJOY in the field of e-vapor devices (commonly called "vapes").  JUUL claims to hold several patents relevant to vapes.

37.    On August 8, 2025, JUUL filed with the Commission a complaint under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, against Plaintiffs.

38.    JUUL's complaint alleges, among other things, that Plaintiffs have unlawfully imported and/or sold within the United States after importation certain e-vapor devices, cartridges used therewith, and components thereof that infringe claims 1, 2–8, and 10 of U.S. Patent No. 12,156,533, specifically as to the formulation of the "e-liquid" contained in the accused products.

39.    On September 9, 2025, the Commission instituted a Section 337 investigation, designated as No. 337-TA-1460.

40.    On September 10, 2025, the Commission assigned ALJ Doris Johnson Hines to preside over the ITC Proceeding.

41.    On September 25, 2025, ALJ Hines scheduled a claim construction hearing for January 8, 2026, and an evidentiary hearing beginning April 22, 2026, with ALJ Hines' initial determination due on September 11, 2026.

42.    The ITC Proceeding is ongoing.

## THE ITC PROCEEDING IS UNCONSTITUTIONAL

43.    The ITC Proceeding against Plaintiffs contravenes the constitutional separation of powers in three independent ways.

44.    First, the ITC Proceeding violates the Appointments Clause of the U.S. Constitution because the ALJ presiding over the ITC Proceeding was appointed not by the full Commission but singlehandedly by the Commission's Chair.

45. Second, the ITC Proceeding violates Article II of the U.S. Constitution because the ALJ presiding over the ITC Proceeding is an inferior Officer of the United States yet enjoys two layers of for-cause protection against removal.

46. Third, the ITC Proceeding violates Article III of, and the Fifth and Seventh Amendments to, the U.S. Constitution because the Commission is adjudicating Plaintiffs' private rights without a jury within the Executive Branch rather than before the independent Judiciary.

**A.     The ALJ presiding over the ITC Proceeding was improperly appointed solely by the Commission's Chair, in violation of the Appointments Clause.**

47. Under *Lucia v. SEC*, 585 U.S. 237 (2018), an inferior Officer of the United States is a person who (1) occupies a continuing position established by law and (2) exercises significant authority pursuant to the laws of the United States.

48. The Supreme Court has held that administrative adjudicators who perform tasks equivalent to the Commission ALJs are inferior Officers. *Id.* at 251 (SEC administrative judges); *see also United States v. Arthrex*, 594 U.S. 1, 13 (2021) (PTAB administrative judges).

49. The Commission ALJs meet both prongs of the *Lucia* test.

50. First, the ALJs hold a continuing position established by law. *See* 5 U.S.C. §§ 3105, 7521; 19 C.F.R. § 210.3.

51. Second, the ALJs exercise "significant authority" when carrying out "important functions," because they have "nearly all the tools of federal trial judges." *Lucia*, 585 U.S. at 245, 248.

52. In particular, Commission ALJs preside at hearings and have the power to take testimony and evidence, 19 C.F.R. §§ 210.36(a)(1), (e); issue subpoenas, *id.* § 210.32(a)(3); rule on motions, *id.* §§ 210.15(a)(1), 210.18(a), (f), 210.25(f); rule on the admissibility of evidence, *id.* § 210.37; enter and enforce compliance with discovery orders, *id.* §§ 210.27(b)–(c), (g)(3),

7

210.28(a)–(b), 210.29(a), 210.33(b)–(c), 210.61; and punish improper conduct of parties and counsel with sanctions, *id.* §§ 210.4(d), 210.25, 210.27(g)(3), 210.33(b)–(c), 210.34(c).

53. The ALJs also issue findings and orders—called initial determinations (IDs)—deciding whether a respondent has violated federal importation law. *Id.* § 210.42(a)(1)(i). Each determination becomes the final determination of the Executive if the Commission and the President do not review an ID within the statutory timeframe. *Id.* §§ 210.42(h)(2), 210.49(d). This "last-word capacity makes this an *a fortiori* case" of inferior Officer status. *Lucia*, 585 U.S. at 249.

54. The government has conceded that Commission ALJs do not "have materially different duties from the ALJ in *Lucia*" and are therefore inferior Officers. *Sidak v ITC*, 678 F. Supp. 3d 1, 10 (D.D.C. 2023), *appeal argued*, No. 23-5149 (D.C. Cir. May 7, 2024).

55. Because Commission ALJs are inferior Officers, their appointment is governed by the Appointments Clause.

56. Inferior Officers must be appointed by the President alone, a Court of Law, or a Head of a Department. U.S. Const. art. II, § 2, cl. 2; *see also Edmonds v. United States*, 520 U.S. 651, 660, 662 (1997).

57. The ALJs are not appointed by the President or by a Court of Law.

58. Instead, one of the six Commissioners is designated as the Chair, 19 U.S.C. § 1330(c)(1), and that Chair singlehandedly appoints the Commission ALJs, *id.* § 1331(a)(1)(A)(i).

59. The "Head[]" of a multi-member agency or commission is not its chair but rather the full membership. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 512–13 (2010); *Lucia*, 585 U.S. at 243; 32 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure – Judicial Review § 8127 (2d ed. updated Apr. 2025).

8

60. The ALJs are therefore not appointed by the "Head[]" of the Commission—i.e., the Commissioners as a group—but rather by one single Commissioner.

61. This constitutional defect is not cured by the fact that each ALJ appointment is "subject to disapproval by a majority vote of all the commissioners." 19 U.S.C. § 1331(a)(1)(C). A collective appointment made by all the members of the Commission is constitutionally unlike a singlehanded appointment made by the Chair alone, even if it is later "subject to disapproval" by the full Commission. *Free Enter. Fund*, 561 U.S. at 512 n.12.

62. The Commission's statutory method of appointing its ALJs therefore violates the Appointments Clause.

**B.      The ALJ presiding over the ITC Proceeding enjoys multiple layers of for-cause removal protection, in violation of Article II.**

63. "The executive Power" is "vested in a President of the United States of America," who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 3.

64. Because the President cannot act alone, "the Constitution provides for executive officers to 'assist the supreme Magistrate in discharging [his] duties.'" *Free Enter. Fund*, 561 U.S. at 483.

65. To retain political accountability, however, the President must have the "power to oversee executive officers through removal," *id.* at 492, a power that necessarily extends to "those who wield executive power on his behalf," *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020).

66. Supreme Court precedents "recognize[] only two exceptions to the President's unrestricted removal power": (1) for-cause removal protection for "expert agencies led by a group of principal officers removable by the President only for good cause," and (2) for-cause removal protection for "certain inferior officers with narrowly defined duties." *Id.* (emphases omitted)

9

(citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935); *Morrison v. Olson*, 487 U.S. 654 (1988)).

67. "These two exceptions … represent what up to now have been the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law LLC*, 591 U.S. at 218 (cleaned up).

68. In *Free Enterprise Fund*, the Supreme Court held unconstitutional a statutory regime—nearly identical to the one at issue here—under which members of the Public Company Accounting Oversight Board were removable only for cause by Commissioners of the Securities and Exchange Commission ("SEC"), who themselves were removable by the President only for cause. 561 U.S. at 486–87, 514.

69. The Court explained that, with two levels of for-cause removal protection, the SEC is responsible not for "the Board's actions" but only "for their own determination of whether the [law's] rigorous good-cause standard is met." *Id.* at 496. "A second level of tenure protection," the Court concluded, "strip[s]" the President of the removal power that the Court's "precedents have preserved" and "impair[s]" his "ability to execute the laws"—an arrangement "contrary to Article II's [V]esting" Clause. *Id.*

70. Like the Board members in *Free Enterprise Fund*, the Commission ALJs are insulated "behind two layers of good-cause tenure," *id.* at 497, a structure that violates the constitutional separation of powers.

71. The government agrees that "multiple layers of removal restrictions shielding administrative law judges (ALJs) are unconstitutional." Press Release, Department of Justice (Feb. 20, 2025), https://www.justice.gov/opa/pr/statement-justicedepartment-chief-staff-chad-mizelle.

72. A Commission ALJ may be removed "only for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a), (b)(1); *see* 19 C.F.R. § 210.3.

73. Members of the Merit Systems Protection Board, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

74. The Commission ALJs are thus doubly insulated from presidential removal, which violates Article II.

C. **The ITC Proceeding usurps the judicial power of the United States and deprives Plaintiffs of their right to a jury trial, in violation of Article III and the Fifth and Seventh Amendments.**

75. Article III, by vesting the judicial power of the United States "in one supreme Court, and in such [Congressionally established] inferior Courts," U.S. Const. art. III, § 1, guarantees citizens a hearing before a neutral arbitrator with life tenure when a party or the government seeks to curtail that citizen's private rights, *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32–33 (2014).

76. Additionally, the Due Process Clause of the Fifth Amendment provides, "No person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see also SEC v. Jarkesy*, 603 U.S. 109, 151 (2024) (Gorsuch, J., concurring) ("[D]ue process demands nothing less than 'the process and proceedings of the common law.'").

77. Relatedly, the Seventh Amendment preserves the right to a jury trial in cases that would have been subject to trial by jury at the time of the ratification of the Amendment in 1791. *Curtis v. Loether*, 415 U.S. 189, 193 (1974).

78. Private rights—including life, liberty, and property—generally may be adjudicated only in Article III courts and not by administrative agencies. *See Jarkesy*, 603 U.S. at 127; *Stern v. Marshall*, 564 U.S. 462, 482–84, 491 (2011).

11

79. The Supreme Court has recognized a narrow exception to the requirement of exclusive Article III jurisdiction where "public rights" are concerned.

80. The narrow sliver of "public rights" cases that may constitutionally be assigned by Congress to non-Article III tribunals for resolution are those that "historically could have been determined exclusively by the executive and legislative branches." *Jarkesy*, 603 U.S. at 112 (cleaned up).

81. The presumption is in favor of Article III jurisdiction, and the burden is on the Commission to show that the public rights exception applies.

82. The ITC Proceeding seeks to adjudicate Plaintiffs' private rights, including Plaintiffs' freedom to transport and sell their products throughout the United States and their property interest in the accused products. Such private rights must be adjudicated by an Article III court, rather than an administrative tribunal like the Commission.

83. There is no historical analogue to 19 U.S.C. § 1337(a)(1)(B) that would justify invocation of the public rights doctrine here. Patent validity and infringement—including in the context of importation—are quintessential questions of private rights and have long been decided by courts of law and equity, rather than by executive bodies. *See Darcy v. Allen (The Case of Monopolies)* (1602) 77 Eng. Rep. 1260; *The Company of Stationers v. Lee* (1681) 89 Eng. Rep. 927.

84. The private nature of the rights at issue is exemplified by the fact that the dispute here is, at bottom, a dispute between two private parties (JUUL and Plaintiffs) regarding competing rights of importation and sale in the United States. The Commission's primary role is as an adjudicator of that private dispute.

85. The Commission's staff attorneys may choose to participate in a Section 337 investigation and proceeding as an interested party, but their participation is entirely optional. No staff attorney has been appointed to participate in the ITC Proceeding.

86. Because the Commission seeks to adjudicate private rights outside of an Article III tribunal, the ITC Proceeding is unconstitutional as to Plaintiffs.

87. For the same reasons, the ITC Proceeding violates the Due Process Clause of the Fifth Amendment.

88. The unconstitutionality of the ITC Proceeding is further exemplified by the fact that Plaintiffs will lose their Seventh Amendment right to a jury trial if the proceeding is allowed to continue.

89. The Seventh Amendment preserves the jury trial right in existence at the time of the Founding. *Curtis*, 415 U.S. at 193.

90. At the time of the Founding, in cases seeking only equitable relief, questions of patent validity were heard and decided by a jury. Questions of patent infringement in such cases were heard by a jury where validity was put at issue. *See Dwight v. Chandler*, C33/279 (Ch. 1603); Statute of Monopolies, 21 Jac. 1 c. 3, § 2 (1624).

91. The ITC Proceeding raises issues of both validity and infringement.

92. Plaintiffs are therefore entitled to a jury pursuant to the Seventh Amendment for the core issues in dispute before the Commission.

93. The maintenance of the ITC Proceeding therefore violates Plaintiffs' Seventh Amendment jury rights.

## II. Plaintiffs will continue to suffer irreparable harm unless the ITC Proceeding is enjoined.

94. As described above, the constitutional defects in the structure of the Commission and in the ITC Proceeding render the proceeding unconstitutional.

95. Unless the ITC Proceeding is enjoined, Plaintiffs will suffer an immediate constitutional injury by being subjected to an illegitimate proceeding. The Supreme Court has recognized that being subjected to an unconstitutional proceeding is a "here-and-now injury" that constitutes concrete harm. *See Axon*, 598 U.S. at 191; *see also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) ("[I]t is sufficient for purposes of a claim under Article III challenging a tribunal's jurisdiction that the claimant demonstrate it has been or inevitably will be subjected to an exercise of such unconstitutional jurisdiction.").

96. Plaintiffs will have no remedy for that harm absent immediate injunctive relief. Because the harm to Plaintiffs arises out of their subjection to an unconstitutional process, that harm cannot fully be remedied after the ITC Proceeding is over. If, for example, Plaintiffs ultimately prevail in the ITC Proceeding, they still will have suffered injury by being subjected to an unconstitutional process but will have no recourse through a petition for review because they will have prevailed on the merits.

97. The irreparable nature of this here-and-now injury is particularly clear because the sovereign immunity of the federal government will ensure that Plaintiffs never recover the cost of complying with a lengthy and burdensome adjudicatory process.

98. The ITC Proceeding also threatens irreparable harm to Plaintiffs in the form of injury to Plaintiffs' commercial plans and relationships, including by creating confusion among Plaintiffs' business partners regarding the regulatory status of their products.

## COUNT I
### (Violation of the Appointments Clause of Article II of the U.S. Constitution)

99. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

100. The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint … all other Officers of the United States … : but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

101. The ALJ who is presiding over the ITC Proceeding is an inferior Officer of the United States because she exercises significant authority pursuant to the laws of the United States and holds a continuing position established by law. *See Lucia*, 585 U.S. at 241.

102. The ALJ who is presiding over the ITC Proceeding was, on information and belief, appointed in accordance with the relevant statute governing such appointment. That statute requires the Chair of the Commission alone to singlehandedly appoint Commission ALJs. *See* 19 U.S.C. § 1331(a)(1)(A)(i).

103. The Commission as a whole, not its Chair, is a "Head" of a Department for purposes of the Appointments Clause. *See Free Enter. Fund*, 561 U.S. at 512–13 (2010); *Lucia*, 585 U.S. at 243.

104. Because the ALJ who is presiding over the ITC Proceeding was not appointed by a Head of a Department, her appointment violated the Appointments Clause.

105. As a result of the ALJ's unconstitutional appointment, Plaintiffs are being subjected to an unconstitutional proceeding.

106. The remedy for this constitutional violation is to enjoin the ITC Proceeding.

## COUNT II
### (Violation of the Take Care and Vesting Clauses of Article II of the U.S. Constitution)

107. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

108. The Take Care Clause of Article II requires the President to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

109. The Vesting Clause of Article II provides that "[t]he executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1.

110. The Vesting Clause and the Take Care Clause bar Congress from providing any Officer of the United States with two levels of for-cause removal protection. *See Free Enter. Fund*, 561 U.S. at 484.

111. The Commission ALJs, including the ALJ presiding over the ITC Proceeding, are inferior Officers of the United States. *See Lucia*, 585 U.S. at 241.

112. The ALJ who is presiding over the ITC Proceeding enjoys two levels of for-cause removal protection because she is removable only for cause by the Merit System Protection Board, members of which are also removable only for cause. *See* 5 U.S.C. §§ 1202(d), 7521(a), (b)(1); 19 C.F.R. § 210.3.

113. Because the ALJ presiding over the ITC Proceeding is an officer of the United States who enjoys two layers of for-cause protection, the ALJ cannot constitutionally oversee the administrative proceeding.

114. As a result of the ALJ's unconstitutional protection from removal, Plaintiffs are being subjected to an unconstitutional proceeding.

115. The remedy for this constitutional violation is to enjoin the ITC Proceeding.

## COUNT III
### (Violation of Article III of, and the Fifth and Seventh Amendments to, the U.S. Constitution)

116.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

117.    Article III of the U.S. Constitution vests the judicial power of the United States in Article III courts.  U.S. Const. art. III, § 1, cl. 1.  Cases involving private rights may not be heard in tribunals other than Article III courts.  *See Stern*, 564 U.S. at 469, 487.  Relatedly, the Seventh Amendment preserves the right to a jury trial in cases that would have been subject to trial by jury at the time of the ratification of the Amendment in 1791.  U.S. Const. amend. VII; *Curtis*, 415 U.S. at 193.  And the Due Process Clause of the Fifth Amendment provides, "No person shall … be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V; *see also Jarkesy*, 603 U.S. at 151 (Gorsuch, J., concurring) ("[D]ue process demands nothing less than 'the process and proceedings of the common law.'").

118.    The ITC Proceeding seeks to adjudicate core private rights, including Plaintiffs' property rights.

119.    Because the ITC Proceeding concerns private rights and is conducted by an administrative agency without a jury, the ITC Proceeding violates Article III of, and the Fifth and Seventh Amendments to, the U.S. Constitution.

120.    The remedy for this constitutional violation is to enjoin the ITC Proceeding.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an order and judgment in favor of Plaintiffs and against Defendants:

a.    Preliminarily and permanently enjoining the ITC Proceeding against Plaintiffs;

b.	Declaring that ALJ Hines was not appointed in accordance with the Appointments Clause;

c.	Declaring that the two layers of for-cause removal protection afforded to Commission ALJs violate Article II of the U.S. Constitution;

d.	Declaring that the Commission's adjudication of private rights without a jury, including through the ITC Proceeding against Plaintiffs, violates Article III of, and the Fifth and Seventh Amendments to, the U.S. Constitution; and

e.	Awarding such other and further relief that the Court deems just and proper.

Dated: November 7, 2025

Respectfully submitted,

By: */s/ Turner A. Broughton*

Turner A. Broughton (VA ID. No. 42627)
WILLIAMS MULLEN
200 South 10th Street
Suite 1600
Richmond, VA 23219
Telephone: (804) 420-6926
Email: tbroughton@williamsmullen.com

Mark A. Perry (*pro hac vice pending*)
Joshua M. Wesneski (*pro hac vice pending*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
Email: joshua.wesneski@weil.com

Paul M. Schoenhard (VA ID No. 65915)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
Telephone: (202) 639-7254
Email: Paul.Schoenhard@friedfrank.com

*Counsel for Plaintiffs NJOY, LLC, NJOY Holdings, INC., Altria Group, INC., Altria Group Distribution Co., Altria Client Services LLC*