IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NJOY, LLC, et al.,
Plaintiffs,

v. Civil No. 3:25-cv-930

THE INTERNATIONAL TRADE
COMMISSION, et al.,
Defendants.

# MEMORANDUM OPINION

This matter is before the Court on PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33). For the reasons set forth below, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) will be granted. Accordingly, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22) will be denied.

## I. BACKGROUND

### A. Procedural Background

On November 7, 2025, NJOY LLC; NJOY Holdings, Inc. (together, "NJOY"); Altria Group, Inc.; Altria Group Distribution Co.; and Altria Client Services (collectively with NJOY, "Plaintiffs") filed a COMPLAINT (ECF No. 1) against the International Trade Commission (the "Commission" or "ITC"); Amy A. Karpel, David S. Johanson, and Jason E. Kearns, in their official capacities as Commissioners of the Commission; and Doris Johnson Hines, in her official capacity as an Administrative Law Judge ("ALJ") of the

Commission (collectively, sometimes "Defendants"). By way of their Complaint, Plaintiffs seek to enjoin the Commission's alleged unlawful administrative proceeding against Plaintiffs concerning Plaintiffs' importation into the United States of certain e-vapor devices, cartridges used therewith, and components thereof (the "ITC Proceeding"). ECF No. 1 at ¶ 1.

Plaintiffs claim that the ITC Proceeding violates three constitutional separation-of-powers principles. ECF No. 1 at ¶ 1. First, Plaintiffs argue that the ALJ presiding over the ITC Proceeding was improperly appointed, in violation of the Appointments Clause. ECF No. 1 at ¶ 2. Second, Plaintiffs contend that the ALJ presiding over the ITC Proceeding enjoys two layers of for-cause protection from presidential removal, in violation of Article II. ECF No. 1 at ¶ 3. Third, Plaintiffs assert that the Commission seeks to adjudicate Plaintiffs' private rights outside of the judiciary and without a jury, in violation of Article III and the Fifth and Seventh Amendments. ECF No. 1 at ¶ 4.

The Commission is an Executive Branch agency comprised of six commissioners appointed by the President, by and with the advice and consent of the Senate. ECF No. 1 at ¶ 21; see 19 U.S.C. § 1330. The Commission is charged with, among other things, investigating the importation of an article into the United States, or the sale of an article within the United States after importation, that infringes a valid and enforceable United States patent. ECF No. 1

at ¶ 24; see 19 U.S.C. § 1337(a)(1)(B). An investigation instituted pursuant to 19 U.S.C. § 1337 is referred to as a "Section 337" investigation or administrative proceeding. ECF No. 1 at ¶ 25. If, in a Section 337 administrative proceeding, the Commission finds a violation, it is statutorily directed to issue an order excluding the violative articles from entry into the United States, unless the Commission determines that certain factors related to public welfare and competitive conditions counsel otherwise. 19 U.S.C. § 1337(d)(1).

Section 337 administrative proceedings are heard in the first instance by an ALJ. 19 C.F.R. § 210.3. After conducting an evidentiary hearing, the ALJ issues an initial determination whether the complainant has demonstrated that respondents have violated Section 337. Id. § 210.42(a)(1)(i). The Commission, and ultimately the President, may elect to review the initial determination, but, if neither conducts such review within the time prescribed by statute, the initial determination becomes the final action of the Executive. Id. §§ 210.42(h)(2), 210.49(d).

On August 8, 2025, JUUL Labs, Inc. ("JUUL") filed with the Commission a complaint under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, against Plaintiffs. ECF No. 1 at ¶¶ 36-37. JUUL's complaint alleges, among other things, that Plaintiffs have unlawfully imported and/or sold within the United States after importation certain e-vapor devices, cartridges used

therewith, and components thereof that infringe claims 1, 2-8, and 10 of U.S. Patent No. 12,156,533, specifically with respect to the formulation of the "e-liquid" contained in the accused products. ECF No. 1 at ¶ 38. On September 9, 2025, the Commission instituted a Section 337 investigation designated as No. 337-TA-1460. ECF No. 1 at ¶ 39. On September 25, 2025, ALJ Hines scheduled a claim construction hearing for January 8, 2026, and an evidentiary hearing for April 22, 2026. ECF No. 1 at ¶ 41.

On April 14, 2026, ALJ Hines issued her initial determination, concluding "that each asserted claim of the only asserted patent, U.S. Patent No. 12,156,533, is invalid under 35 U.S.C. § 102(a)(1)" and that "there is no violation of Section 337." See ECF No. 42 at 2. On July 2, 2026, Defendants filed their NOTICE (ECF No. 54) informing the Court that the Commission had decided "to review the [ALJ's] April 14, 2026 Order that granted a motion for summary determination of invalidity and found no violation of 19 U.S.C. § 1337." ECF No. 54 at 2. "On review, the Commission can determine to affirm the ALJ's determination, reverse the ALJ's determination, or remand the investigation to the ALJ for further proceedings." ECF No. 54 at 2. On August 13, 2026, the Commission issued a notice that it vacated the initial determination made by ALJ Hines and remanded the matter to ALJ Hines for further proceedings consistent with the Commission's concurrently issued opinion and remand order. See ECF No. 77-1 at 2-3.

On June 11, 2026, the Court by ORDER (ECF No. 61) denied PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (ECF No. 20).

**B. The Cross-Motions for Summary Judgment**

On December 8, 2025, Plaintiffs filed PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22) and their MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 23). Plaintiffs seek to permanently enjoin the pending ITC Proceeding against them. ECF No. 22 at 1. Plaintiffs assert they are entitled to summary judgment for the following reasons: (1) "[t]he ITC proceeding is unconstitutional because it is presided over by an ALJ—an inferior Officer—who was not appointed in accordance with the Appointments Clause[;]" (2) "[t]he statutory scheme for Commission ALJs is constitutionally defective for the additional and independent reason that it vests ALJs with two layers of for-cause removal protection, violating the separation of powers[;]" and (3) "the Commission seeks to adjudicate Plaintiffs' <u>private rights</u>, which requires the exercise of the 'judicial Power of the United States.'" ECF No. 23 at 8, 13, 18 (quoting U.S. CONST. art. III, § 1.). On December 29, 2025, Defendants filed their OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 32). On January 6, 2026, Plaintiffs filed PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (ECF No. 37).

On December 29, 2025, Defendants filed DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) and their MEMORANDUM IN SUPPORT OF

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 34). Defendants request that the Court grant its Motion for Summary Judgment, deny Plaintiffs' Motion for Summary Judgment, and enter final judgment in Defendants' favor on all claims. ECF No. 33 at 2. On January 6, 2026, Plaintiffs filed PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 35). On January 12, 2026, Defendants filed their REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 38).

## II. LEGAL STANDARD

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where parties file cross-motions for summary judgment, courts consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of

law.'" Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co., 261 F. Supp. 3d 680, 687 (E.D. Va. 2017) (quoting Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392-93 (4th Cir. 2014)).

**B. Permanent Injunction**

A permanent injunction is available only if the party seeking it demonstrates actual success on the merits of the claim upon which suit was brought. Mayor of Baltimore v. Azar, 973 F.3d 258, 274 (4th Cir. 2020) (quoting Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987)). But to show that an injunction is an appropriate remedy, Plaintiffs also must demonstrate:

> (1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006)) (emphasis added).

## III. ANALYSIS

**A. Was ALJ Hines Appointed in Accordance with the Appointments Clause?**

Plaintiffs argue that "[t]he ITC proceeding is unconstitutional because it is presided over by an ALJ—an inferior

Officer—who was not appointed in accordance with the Appointments Clause." ECF No. 23 at 8.

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." Lucia v. Sec. & Exch. Comm'n, 585 U.S. 237, 241 (2018) (quoting U.S. CONST., Art. II, § 2, cl. 2). "The Appointments Clause prescribes the exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so." Lucia, 585 U.S. at 244 (citing U.S. CONST., Art. II, § 2, cl. 2 ("[The President] . . . shall nominate, and by and with the advice and consent of the Senate, shall appoint . . . all other Officers of the United States . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.").

At the outset, the Court must determine whether the ITC's ALJs are "Officers of the United States" or simply employees of the Federal Government because the restrictions laid out in the Appointments Clause only apply to the former ("Officers"). The Supreme Court in Lucia laid out the framework for distinguishing between officers and employees. First, the Supreme Court has "made clear that an individual must occupy a 'continuing' position established by law to qualify as an officer." Lucia, 585 U.S. at

245 (citing United States v. Germaine, 99 U.S. 508, 511-12 (1878)) ("Germaine held that 'civil surgeons' (doctors hired to perform various physical exams) were mere employees because their duties were 'occasional or temporary' rather than 'continuing and permanent.'"). Second, to qualify as an officer, an individual must "exercis[e] significant authority pursuant to the laws of the United States." Lucia 585 U.S. at 245 (quoting Buckley v. Valeo, 424 U.S. 1, 126 (1976) (per curiam)) ("The inquiry thus focused on the extent of power an individual wields in carrying out his assigned functions.").

Here, neither party disputes that the ITC's ALJs are inferior officers. First, seeing as how the ITC's ALJs "receive[] a career appointment[,]" see 5 C.F.R. § 930.204(a), they clearly occupy a "continuing" position sufficient to qualify as an officer. Second, consistent with the findings made in Lucia as to the SEC's ALJs, the ITC's ALJs exercise the same "significant" discretion in carrying out their duties and conducting adversarial inquiries. 19 C.F.R. § 210.3; see Lucia, 585 U.S. at 248-49. Specifically, ITC ALJs preside at hearings and have the power to take evidence and hear argument, 19 C.F.R. § 210.36(a)(1), (e); issue subpoenas, id. § 210.32(a)(3); rule on motions, id. §§ 210.15(a)(1), 210.18(a), (f), 210.25(f); rule on the admissibility of evidence, id. § 210.37; enter and enforce compliance with discovery orders, id. §§ 210.27(b)-(c), (g)(3), 210.28(a)-(b), 210.29(a), 210.33(b)-(c),

210.61; and punish improper conduct with sanctions, id. §§ 210.4(d), 210.25, 210.27(g)(3), 210.33(b)-(c), 210.34(c). Therefore, just as the SEC's ALJs were found to be officers in Lucia, the ITC's ALJS are inferior Officers.[1]

The Appointments Clause dictates that Presidential appointment, by and with the advice and consent of the Senate, is the "default manner of appointment for inferior officers[,]" see Edmond v. United States, 520 U.S. 651, 660 (1997); but "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. CONST., Art. II, § 2, cl. 2 (emphasis added). As it pertains to the ITC, the Head of Department "means the commissioners acting collectively, not the chairman acting alone." Sidak, 174 F.4th at 155; see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 511-13 (2010). It is undisputed that the ITC's ALJs were not appointed by the President or any Court of Law. Therefore, having found that the ITC's ALJs are inferior Officers,[2] to determine whether the ITC's ALJs were

---

[1] The United States Court of Appeals for the D.C. Circuit in Sidak, appears to have reached the same conclusion, treating the ITC's ALJs as "inferior Officers" in its analysis. See Sidak v. United States Int'l Trade Comm'n, 174 F.4th 151, 154-55 (D.C. Cir. 2026).

[2] Based on the Lucia framework, the ITC's ALJs are clearly "Officers." What makes the ITC's ALJs "inferior" as opposed to "principal" officers is the fact that the ITC's ALJs' "work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the

properly appointed in line with the Appointments Clause, it is necessary to determine: (1) whether Congress, "by Law[,]" vested the Appointment of the ITC's ALJs in the Head of Department (the commissioners acting collectively); and (2) whether the Head of Department (the commissioners acting collectively) actually appointed the ITC's ALJs.

To evaluate whether Congress, by law, vested the appointment of the ITC's ALJs in the Head of Department (the commissioners acting collectively), there are two potentially relevant statutory provisions to be analyzed: 19 U.S.C. § 1331 and 5 U.S.C. § 3105. 5 U.S.C. § 3105 provides that:

> [e]ach agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title. Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges.

Id. § 3105 (emphasis added). 19 U.S.C. § 1331 provides:

> [e]xcept as provided in paragraph (2), the chairman of the Commission shall— . . . appoint and fix the compensation of such employees of the Commission as he deems necessary (other than the personal staff of each commissioner), including the secretary . . . .

Id. § 1331(a)(1)(A)(i) (emphasis added).

---

Senate." Kennedy v. Braidwood Mgmt., Inc., 606 U.S. 748, 761 (2025) (quoting Edmond, 520 U.S. at 663). Additionally, both Plaintiffs and Defendants here treat the ITC's ALJs as inferior officers.

A review of the plain text of 19 U.S.C. § 1331 highlights that this provision does not by law vest the entire Commission (the "Head" of the ITC for the purposes of the Appointments Clause) with the power to appoint ITC ALJs. Instead, § 1331 merely provides the "chairman of the Commission" with the ability to appoint "employees of the Commission . . . ." Id. § 1331(a)(1)(A)(i) (emphasis added). Thus, Defendants cannot rely on § 1331 to establish that Congress has by law vested the Appointment of the ITC's ALJs in the commissioners acting collectively.

If this were the only available statutory authority, then Plaintiffs would be correct that any efforts taken by the ITC Commissioners to ratify past ALJ appointments by a formal vote of the full Commission would be improper because § 1331 did not by law vest the appointment power with the full Commission. However, Defendants direct the Court to consider a different statute, 5 U.S.C. § 3105, and argue that it by law vests the full Commission with appointment authority over ITC ALJs. ECF No. 32 at 12. In Defendants' view, the full Commission pursuant to the authority conferred upon it by 5 U.S.C. § 3105, voted to appoint ALJ Hines on November 16, 2022. See Notice, 90 Fed. Reg. 54,367-68 (Nov. 26, 2025); ECF No. 32 at 12.

As mentioned above, 5 U.S.C. § 3105 states, "[e]ach agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with

sections 556 and 557 of this title." Id. § 3105 (emphasis added).[3] At the outset, while § 3105 refers to "agenc[ies]" and not "Heads of Departments[,]" it is important to note that "[t]he Supreme Court has held that an agency 'constitutes a "Department" for purposes of the Appointments Clause' if it is a 'freestanding component of the Executive Branch not subordinate to or contained within any other such component.'" Rodriguez v. Soc. Sec. Admin., 118 F.4th 1302, 1310 (11th Cir. 2024) (citing Free Enter. Fund, 561 U.S. at 510-11 (holding that the SEC was a "Department" under the Appointments Clause)). The International Trade Commission is an independent agency and, as a result, is a "Department[]" for the purposes of the Appointments Clause.

The Fourth Circuit in K & R Contractors found that, consistent with the authority Congress had vested by law pursuant to § 3105, the Secretary of Labor (the "Head[]" of the Department of Labor) had appointed multiple ALJs in accord with the requirements of the Appointments Clause. See K & R Contractors, LLC v. Keene, 86 F.4th 135, 143-44 (4th Cir. 2023). The Fourth Circuit went on to reject the argument "that ratification by a department head cannot

[3] With some exceptions, Section 337 Proceedings are conducted in accordance with the Administrative Procedure Act. See 19 C.F.R. § 210.36(d) ("Every hearing under this section shall be conducted in accordance with the Administrative Procedure Act (i.e., 5 U.S.C. §§ 554 through 556). Hence, every party shall have the right of adequate notice, cross-examination, presentation of evidence, objection, motion, argument, and all other rights essential to a fair hearing.").

prospectively cure a prior unconstitutional appointment." Id. at 144. There is no reason to treat the appointment of the ITC's ALJs by formal vote of the full Commission (the "Head" of the International Trade Commission) any differently. Therefore, § 3105 provides the ITC Commissioners acting collectively with the authority to appoint ALJs as inferior officers to preside over Section 337 administrative proceedings. The ITC Commissioners properly exercised that authority when the full commission voted to approve the appointment of ALJ Hines. See Notice, 90 Fed. Reg. 54367-68 (Nov. 26, 2025). Therefore, there is no violation of the Appointments Clause as to the appointment of ALJ Hines.

Without acknowledging the Fourth Circuit's decision in K & R Contractors, Plaintiffs argue that § 3105 "does not prescribe the method of appointment. It states merely that the 'agency' shall appoint ALJs and assign them to cases in rotation." ECF No. 37 at 3. According to Plaintiffs, the method of appointment is governed by 19 U.S.C. § 1331, which dictates that appointment power is held by "the chairman of the Commission . . . ." Id. § 1331(a)(1)(A)(i). In turn, Plaintiffs argue that appointment power was never vested by law in the full Commission, as would be required by the Appointments Clause. However, Plaintiffs' understanding of both 5 U.S.C. § 3105 and 19 U.S.C. § 1331, as it pertains to appointment of the ITC's ALJs, is without support. In fact, Plaintiffs' argument appears to be foreclosed by the holding

in K & R Contractors, which held that § 3105 by law vested the Secretary of Labor (the "Head[]" of the Department of Labor) with the power to appoint ALJs in accord with the requirements of the Appointments Clause. Plaintiffs, in essence, ask for a strained interpretation regarding the interplay between two unrelated statutes that would render unconstitutional the appointment of all ITC ALJs. "We will not read the statute[s] to usher in such a bizarre and half-baked scheme." Kennedy, 606 U.S. at 787. The far more sensible reading is that § 3105 by law vests the full Commission with the authority to appoint ALJs to oversee Section 337 Proceedings. See id. at 775 ("We should not read the statute in a way that makes the current method of appointment . . . unconstitutional if we can reasonably read it otherwise.").

Plaintiffs, in support of their position, highlight the fact that the ITC has explicitly stated that it was relying on § 1331 to appoint its ALJs. See Notice, 90 Fed. Reg. 54367-68 (Nov. 26, 2025) ("Pursuant to section 331 of the Tariff Act, 19 U.S.C. 1331, the Chairman of the Commission has the authority to 'appoint and fix the compensation of such employees of the Commission as he deems necessary,' including ALJs. 19 U.S.C. 1331(a)(1)(A)(1). Any such decision by the Chairman, however, is 'subject to disapproval by a majority vote of all the commissioners in office.' 19 U.S.C. 1331(a)(1)(C)"). Plaintiffs contend that, because the ITC did not

cite § 3105 as its authority for appointing its ALJs, "Defendants cannot now argue that § 3105—not § 1331(a)(1)(A)(i)—vests the appointment power." ECF No. 37 at 4. That is wrong for a few reasons.

First, Commission regulations define the "administrative law judge" as "the person appointed under section 3105 of Title 5 of the United States Code who presides over the taking of evidence in an investigation under" Section 337 proceedings. 19 C.F.R. § 210.3.[4] Second, even though the ITC may have cited the incorrect statute in support of its authority to appoint ALJs in the Notice issued on November 26, 2025, that alone is not sufficient to render the appointment of ALJ Hines unconstitutional. Neither waiver nor estoppel on this issue would be appropriate.

Therefore, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) will be granted as to COUNT I of the COMPLAINT (ECF No. 1). The same reasons call for denial of PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22) as to COUNT I of the COMPLAINT (ECF No. 1).

---

[4] Plaintiffs even acknowledge this in their briefs. See ECF No. 23 at 14 ("ALJs are appointed 'under section 3105 of title 5 of the United States Code,' 19 C.F.R. § 210.3, and may be removed 'only for good cause established and determined by the Merit Systems Protection Board,' 5 U.S.C. § 7521(a), (b)(1)").

**B. Do ITC ALJs Enjoy Two Layers of For-Cause Removal Protection, in Violation of the Vesting Clause and Take Care Clause?**

Plaintiffs further argue that "[t]he statutory scheme for Commission ALJs is constitutionally defective for the additional and independent reason that it vests ALJs with two layers of for-cause removal protection, violating the separation of powers." ECF No. 23 at 13.

Article II of the Constitution vests "[t]he executive Power" in "a President," who must "take Care that the Laws be faithfully executed . . . ." U.S. CONST. art. II, § 1, cl. 1; id. § 3. "Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." Seila Law LLC v. CFPB, 591 U.S. 197, 203-04 (2020). And "[s]ince 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary." Free Enter. Fund, 561 U.S. at 483.

In Free Enterprise Fund, "the [Supreme] Court held that the President may not be 'restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States.'" K & R Contractors, 86 F.4th at 146-47 (quoting Free Enter. Fund, 561 U.S. at 484). "[S]uch multilevel protection from removal is

contrary to Article II's vesting of the executive power in the President." Free Enter. Fund, 561 U.S. at 484.

"The removal mechanism at issue in Free Enterprise Fund insulated inferior officers from the President by two layers of for-cause tenure. Congress had provided that members of the Public Company Accounting Oversight Board could be removed only 'for good cause' as determined by the Securities and Exchange Commission after notice and opportunity for a hearing." K & R Contractors, 86 F.4th at 147 (quoting Free Enter. Fund, 561 U.S. at 486). "And members of the Commission could be removed by the President only for 'inefficiency, neglect of duty, or malfeasance in office.'" K & R Contractors, 86 F.4th at 147 (quoting Free Enter. Fund, 561 U.S. at 487). In Free Enterprise Fund, the Supreme Court held that "the dual for-cause limitations on the removal of Board members contravene[d] the Constitution's separation of powers." Free Enter. Fund, 561 U.S. at 492.

Plaintiffs contend that ITC ALJs are similarly insulated behind two layers of good-cause tenure protection, in violation of the Constitution's separation of powers. ECF No. 23 at 14. Plaintiffs assert that the ITC ALJs are "appointed under section 3105 of title 5 of the United States Code[,]" 19 C.F.R. § 210.3; and may be removed "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board[,]" 5 U.S.C. § 7521(a),

(b)(1). See ECF No. 23 at 14. Additionally, members of the Merit Systems Protection Board "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). In turn, Plaintiffs argue that ITC ALJs are "doubly insulated from presidential removal[,]" in violation of the Constitution's separation of powers. ECF No. 23 at 14.

As discussed in K & R Contractors, "the courts of appeals are divided about whether the dual for-cause limitations on the removal of ALJs—specifically, 5 U.S.C. § 7521 and § 1202(d)—are constitutional." K & R Contractors, 86 F.th at 148. "Notwithstanding this debate, it is 'a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'" Bond v. United States, 572 U.S. 844, 855 (2014) (quoting Escambia Cnty. v. McMillan, 466 U.S. 48, 51 (1984) (per curiam)). "Here, regardless of how we answer the constitutional question presented by the removal provisions, we would be required to deny the petition because [Plaintiffs] ha[ve] not asserted any harm resulting from the allegedly unconstitutional statutes, as explained below. Consequently, we are constrained to avoid resolving that constitutional question in this case." K & R Contractors, 86 F.4th at 148-49.

Here, the harm claimed by Plaintiffs is that they are being subjected to a proceeding being carried out by an unaccountable ITC ALJ who enjoys two levels of for-cause removal protection, in violation of the Constitution. ECF No. 23 at 13. Plaintiffs in this case seek only prospective relief, asking the Court to enjoin the ongoing ITC Proceeding before ALJ Hines. ECF No. 37 at 6-7.

In Collins v. Yellen, the Supreme Court, "[h]aving found that the removal restriction [at issue in that case] violate[d] the Constitution," addressed whether petitioners were entitled to any retrospective relief. 594 U.S. 220, 257. The Supreme Court held that "vacatur is not automatically warranted when a court concludes that an executive branch decisionmaker was subject to unconstitutional removal restrictions." K & R Contractors, 86 F.4th at 149 (citing Collins, 594 U.S. at 257-61). As the Supreme Court went on to explain in Collins, "[a] constitutional defect in the procedure for removing that officer—unlike a defect in his appointment—is 'no basis for concluding' that he 'lacked the authority to carry out the functions of the office.'" K & R Contractors, 86 F.4th at 149 (citing Collins, 594 U.S. at 258). "Rather, the actions of a lawfully appointed executive officer fulfilling the duties of his office are legitimate and enforceable, even if the President's authority to remove the officer was unconstitutionally limited during his tenure." K & R Contractors, 86 F.4th at 149 (emphasis added).

While a constitutional defect in the removal procedure for a validly appointed officer alone provides no basis for concluding that the officer lacked the authority to carry out the functions of thei office, the Supreme Court in Collins noted that "it is still possible for an unconstitutional [removal] provision to inflict compensable harm." Collins, 594 U.S. at 259 (emphasis added). The Supreme Court provided two examples:

> [s]uppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

Id. at 259-60. In other words, the challenger must demonstrate that the unconstitutional removal provision actually caused some harm beyond the mere existence of the unconstitutional removal provision. Id.

Plaintiffs argue that the holding in Collins was limited to retrospective relief and, in turn, is not applicable to their request for prospective injunctive relief. See ECF No. 37 at 6. However, most courts that have reached this issue have held that the reasoning in Collins applies to both retrospective and prospective relief. See Calcutt v. Fed. Deposit Ins. Corp., 37 F.4th 293, 316 (6th Cir. 2022), cert. granted, opinion rev'd on other grounds, 598 U.S. 623 (2023) ("The Collins inquiry focuses

on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief (particularly when we review an adjudication that has already ended)."); CFPB v. L. Offs. of Crystal Moroney, P.C., 63 F.4th 174, 180-81 (2d Cir. 2023) (applying Collins where the plaintiff requested prospective relief—enforcement of a civil investigative demand); Leachco, Inc. v. Consumer Prod. Safety Comm'n, 103 F.4th 748, 757 (10th Cir. 2024), cert. denied, 145 S. Ct. 1047 (2025) ("Collins' relief analysis applies to both retrospective and prospective relief.").

This Court is persuaded by the reasoning of the Sixth, Second, and Tenth Circuits, as well as the other district courts both within and outside the Fourth Circuit, that have held that the reasoning in Collins applies to both retrospective and prospective relief. See, e.g., Manis v. U.S. Dep't of Agric., 796 F. Supp. 3d 178, 202 (M.D.N.C. 2025) (finding persuasive the reasoning of the "many circuit courts [that] have held that Collins's required showing of 'compensable harm' in order to obtain relief based on unconstitutional removal restrictions applies equally to both retrospective and prospective relief"); Imp. Motors II, Inc. v. Cowen, No. 25-cv-07284, 2025 WL 2589046, at *2 (N.D. Cal. Sept. 8, 2025) (holding that the reasoning in Collins applied with equal

force regardless of the relief sought). Accordingly, the Court will apply the Collins standard when determining whether Plaintiffs are entitled to prospective relief in this case.

Here, the Court has found that ALJ Hines was lawfully appointed. See supra Section A, at 14. While a constitutional defect in the removal procedure for a validly appointed officer alone provides no basis for concluding that the officer lacked the authority to carry out the functions of their office, the Supreme Court in Collins noted that "it is still possible for an unconstitutional [removal] provision to inflict compensable harm." Collins, 594 U.S. at 259 (emphasis added). Therefore, the burden is on Plaintiffs to demonstrate that the unconstitutional removal provision actually caused some harm to them beyond the mere existence of the unconstitutional removal provision. Id. at 259-60. Plaintiffs have failed to provide any evidence to establish that they have suffered a compensable harm that would entitle them to a remedy.

Plaintiffs, in support of their position, direct the Court to consider the Fifth Circuit's decision in Space Expl. Techs. Corp. v. NLRB, 151 F.4th 761 (5th Cir. 2025). The Fifth Circuit, relying on language from Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175 (2023), held that being subjected to an administrative adjudication before an ALJ that is unconstitutionally insulated from removal is "a here-and-now injury" that is "impossible to

remedy once the proceeding is over." Space Expl. Techs. Corp., 151 F.4th at 780 (quoting Axon Enter., Inc., 598 U.S. at 191). The Fifth Circuit found "that harm [to be] irreparable." Space Expl. Techs. Corp., 151 F.4th at 780. The Fifth Circuit declined to extend Collins to requests for prospective relief to enjoin alleged unconstitutional agency proceedings. Id. ("[O]nce an unconstitutional proceeding begins, the damage is done. That is the essence of irreparability. No further showing—such as how the outcome might differ under a valid structure—is required.").

However, the Fifth Circuit appears to read Axon for more than it is worth. First, "Axon did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." Leachco, 103 F.4th at 758. "The [Supreme] Court in Axon only addressed whether the petitioners, who were respondents in administrative enforcement actions before the SEC and FTC, could initially bring collateral challenges in federal district court to the constitutionality of those agencies' structure." Id. (citing Axon, 598 U.S. at 180). The Supreme Court went on to answer that strictly jurisdictional question by applying the jurisdictional factors from Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994), but, importantly, did not address the issue of relief. See Axon, 598 U.S. at 186, 195-96. The "here-and-now injury" statements from Axon, relied upon by Plaintiffs, were made in the context of the Supreme Court's jurisdictional Thunder Basin analysis and not

within the context of determining whether the plaintiff in that case was entitled to preliminary injunctive relief.[5]

Second, "Supreme Court precedent supports a narrow application of Axon's 'here-and-now injury' language." Leachco, 103 F.4th at 759. "The [Supreme] Court's 'here-and-now injury' language in Axon originated from Seila Law, where the [Supreme] Court considered whether the petitioner . . . had standing to challenge the CFPB's structure." Leachco, 103 F.4th at 759; see Axon, 598 U.S. at 191 (citing to Seila Law to support the conclusion that "being subjected" to a "proceeding by an unaccountable ALJ" is "a here-and-now injury"). In Seila Law, the Supreme Court held that it had jurisdiction to reach the merits because "when [a removal provision] violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court." Seila Law, 591 U.S. at 212. "However, Seila Law concerned standing, not entitlement to injunctive relief." Leachco, 103 F.4th at 759; see also YAPP USA Auto. Sys., Inc. v. NLRB, No. 24-1754, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024) (noting that Axon did not address issues of

[5] Judge Wiener, in his partial dissent in Space Expl. Techs. Corp., argues that "the majority opinion mistakenly conflates the jurisdictional ability of district courts to hear and issue injunctive relief in 'here-and-now' injury cases with the burden placed on the party seeking injunctive relief" and notes that this "is worrisome because it stretches Axon past the Supreme Court's intent and also creates a circuit split." 151 F.4th at 784-85.

relief or injury). This key distinction was highlighted by the Supreme Court in Collins:

> [w]hat we said about standing in Seila Law should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer and that the plaintiff alleges was void . . . . But that holding on standing does not mean that actions taken by such an officer are void ab initio and must be undone.

Collins, 594 U.S. at 258 n.24 (internal citations omitted) (emphasis added). Here, the Court "will follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language from Axon . . . ." Leachco, 103 F.4th at 759.

For the reasons set forth above, Collins's required showing of 'compensable harm' in order to obtain relief based on unconstitutional removal restrictions applies equally to both retrospective and prospective relief. Here, Plaintiffs have not provided any evidence to establish that they have suffered a compensable harm that would entitle them to a remedy. Accordingly, Plaintiffs have failed to demonstrate that they have suffered an irreparable injury and, in turn, are not entitled to a permanent injunction. Therefore, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) will be granted as to COUNT II of the COMPLAINT (ECF No. 1). And, for the same reasons, PLAINTIFFS' MOTION FOR SUMMARY

JUDGMENT (ECF No. 22) will be denied as to COUNT II of the COMPLAINT (ECF No. 1).

**C. Does the ITC Proceeding Involve the Adjudication of Plaintiffs' Private Rights Outside the Judiciary and Without a Jury, in Violation of Article III and the Fifth and Seventh Amendments?**

Adopting in full the reasoning set forth in the MEMORANDUM OPINION (ECF No. 60), the Court finds that the challenged ITC Proceeding involves public rights, not private rights. In turn, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) will be granted as to COUNT III of the COMPLAINT (ECF No. 1); and the PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22) will be denied as to COUNT III of the COMPLAINT (ECF No. 1).

## IV. CONCLUSION

For the reasons set forth below, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) will be granted and PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22) will be denied by forthcoming order.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 3, 2026